# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

VERA THOMPSON, DONNA BOWLEN and
FIRST FINANCIAL TRUST COMPANY, as
Personal Representatives of the ESTATE OF
BRENDA GONZALES,

        Plaintiffs,                              Civil No. 01-1088 WJ/JG

BURLINGTON NORTHERN SANTA FE
RAILWAY CORPORATION, a Texas corporation,
JULIAN RUBIO, JARET T. WOOTTON,
LESTER CISNEROS, and JOHN DOES I_V,
in their individual capacities,

        Defendants.

## MEMORANDUM OPINION AND ORDER

THIS MATTER comes before the Court upon a Motion by Burlington Northern to Dismiss Certain Allegations of the Complaint Pursuant to Rules 12(b)(6) and (9)(b), filed January 27, 2002 **(Doc. 29)**. Plaintiff Brenda Gonzales died in August of 1998 following a collision between the vehicle she was driving and two diesel locomotives while she was attempting to cross a railroad track located in Roosevelt County, New Mexico. Plaintiffs allege violations of federal regulatory statutes and 42 U.S.C. § 1983 as well as state claims of negligence and wrongful death.

Defendant ("BNSF") seeks the dismissal of Count I, ¶ 12(c), (m) and (t); Count II, ¶¶ 18-32; and Count III of Plaintiffs' Complaint. These sections involve allegations against Operation Lifesaver, Inc. ("OLI"), a national, non-profit education and awareness program directed at railway safety, to which the federal government and BNSF contribute money (hereinafter referred to as "OSI allegations"). BNSF contends that these portions of the complaint do not allege essential

elements of any claim recognized in New Mexico, that allegations of fraud do not meet the specificity requirements under Rule 9(b) and that the complaint fails to allege a cognizable claim under Restatement (Second) § 324A.

*Negligent or Fraudulent Misrepresentation*

Defendant contends that Plaintiffs fail to meet the minimum pleading standards required to defeat a 12(b)(6) motion. Dismissal is inappropriate under Fed.R.Civ.P. 12(b)(6) unless the plaintiff can prove no set of facts in support of his claims to entitle him to relief. *Seamons v. Snow*, 84 F.3d 1226, 1231-1232 (10th Cir. 1996). The court must accept as true all the factual allegations in the complaint, construe them in a light most favorable to the plaintiff, and resolve all reasonable inferences in plaintiff's favor. *Id.* (citations omitted).

While the complaint does not neatly separate allegations into categories of negligent and fraudulent misrepresentation, nevertheless I find that it contains factual allegations which constitute the essence of both types of claims under New Mexico law.[1] A complaint need not set out a specific theory, as long as facts are alleged, either directly or inferentially, that satisfy each element of the claims. *See Mid America Title Co. v. Kirk*, 991 F.2d 417, 421 (7th Cir. 1993) (consistent with court's obligation to construe complaints liberally, pleader is not required to identify a specific legal theory).

---

[1] In a claim of negligent misrepresentation, a plaintiff must show that defendant made a false representation of fact; the representation was made in the absence of ordinary care; it was foreseeable that plaintiff would be harmed if the representation was false or misleading; and plaintiff justifiably relied on the information. N.M. UJI 13-1632. To prove fraudulent misrepresentation, a plaintiff must show by clear and convincing evidence that defendant knowingly made a misrepresentation of fact with the intent to deceive and induce reliance and that the plaintiff did in fact rely on the representation. N.M. UJI 13-1633.

2

The gist of the OLI allegations is that BNSF used Operation Lifesaver as a conduit through which to provide false and misleading information to Plaintiffs, the public and governmental agencies. ¶ 23. Allegations in ¶¶ 12(c), (m), and (t) of the complaint state that Defendant "has intentionally elected to engage in an information campaign designed to obscure the truth"; that "Defendant railroad's education program through Operation Lifesaver., Inc. promotes the practice of ignoring the railroads' public safety duties"; that Defendant has intentionally misrepresented the effectiveness of railroad crossing devices which has "the effect of increasing risk to the motoring public"; and that Defendant has "engaged in conduct designed to limit the installation of these devices." In ¶¶ 23 to 29, Plaintiffs allege that BNSF knew the representations made by Operation Lifesaver about railroad safety to be false; that BNSF intended for "Plaintiffs, railroad employees, the public, governmental agencies and government employees to rely on these misrepresentations" in order to decrease the railroad's liability in grade crossing accidents; and that Plaintiffs did rely on the representations not knowing they were false. The complaint goes on to state that BNSF's false representations "contributed to the failure"of any entity to make railroad crossings safer for the motoring public, and that unnecessarily dangerous railroad crossings are a "direct and proximate result" of these misrepresentations.

Viewing the facts from the Plaintiffs' perspective, it would be premature to conclude that Plaintiffs could prove no set of facts which would entitle it to relief. *See Carparts Distrib. Ctr. v. Automotive wholesaler's Ass'n. of New England, Inc.*, 37 F.3d 12, 17 (1st Cir. 1994) (possibility of a claim is enough to defeat Fed.R.Civ.P. 12(b)(6) motion); *see American Home Assur. Co. v. Cessna Aircraft Co.*, 551 F.2d 804, 808 (10th Cir. 1977) (complaint cannot be dismissed unless it appears beyond doubt that the plaintiff can prove no set of facts which would entitle it to relief).

Alleging liability of BNSF based on its support of an information campaign seems might seem overly ambitious. However, for purposes of this motion, I find that the OLI allegations sketch out bare-bones theories of negligent and fraudulent misrepresentation against the railroad so as to withstand Defendant's motion to dismiss under Rule 12(b)(6). *See Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974) (issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims).

*Rule 9(b)*

Defendant argues that the Court should dismiss the OLI allegations because Plaintiffs have failed to plead fraud with the specificity required under Rule 9(b). The purpose of Rule 9(b) is "to afford defendant fair notice of plaintiff's claims and the factual ground upon which [they] are based . . . ." *Farlow v. Peat, Marwick, Mitchell & Co*., 956 F.2d 982, 987 (10th Cir.1992) (quoting *Ross v. Bolton*, 904 F.2d 819, 823 (2d Cir.1990)). Simply stated, a complaint must "set forth the time, place and contents of the false representation, the identity of the party making the false statements and the consequences thereof." *See Schwartz v. Celestial Seasonings*, 124 F.3d 1246, 1252 (10th Cir. 1997) (citation omitted).

At least some specific examples of the alleged false claims must be provided in the complaint. *See U.S. ex Rel. Downy v. Corning, Inc*., 118 F.Supp.2d 1160, 1173 (D.N.M. 2000). The targeted paragraphs in the complaint charge Defendant BNSF with knowledge about false and misleading information being fed to the media and the public through a campaign (Operation Lifesaver) that was presented as a "grassroots safety program" but which in reality served "only the special interest of the RR industry. ¶¶ 21(a)(i), 22(b). As the source of the misinformation, Plaintiffs point to Operation Lifesaver videos, newsletters, handouts and program materials as

4

containing misinformation. ¶ 31. Plaintiffs mention certain specifics regarding train mounted audible warning systems, ¶ 12(c), and other devices such as "lights and gates" which are affordable and more effective but which Defendant has misrepresented as being less effective. ¶ 12(t). Plaintiffs further allege that Defendant "has chosen not to monitor, investigate or punish whistle violations," failed to "accurately document these violations," and "fraudulently" reported compliance to the Federal Railroad Administration, law enforcement and the public.

Defendant contends that the allegations lack "clarity with respect to the actual substance" of the misinformation. However, because evidentiary details need not be alleged, *Romero v. Sanchez*, 83 N.M. 358, 492 P.2d 140 (1971), I find that the allegations meet Rule 9(b) requirements because they leave no doubt in Defendant's mind as to the claims asserted. *Id*. (there is sufficient particularity in the pleading if the facts alleged are facts from which fraud will be necessarily implied). Further, given the range of years over which Plaintiffs allege Defendant's allegedly fraudulent conduct to have occurred, more detailed information at this stage of the pleadings is not required. [2] Therefore, Defendant's motion as to Plaintiffs' claims of negligent and fraudulent misrepresentation will be denied.

*Claims under Restatement § 324A*

Plaintiffs contends that BNSF has assumed duties under § 324A[3] by creating a corporate

---

[2] *See, e.g.,* ¶12(c) ("Defendant railroad has known the inherent problems with train mounted audible warning systems for over 25 years and has done nothing to resolve those problems . . . .") ¶30 ("since its incorporation in August of 1986, Operation Livesaver, Inc., has actively targeted the public and the transportation industry with a long-term advertising campaign that continue to this date.")

[3] Under ¶ 324A, one who undertakes, "gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of a third person . . . is subject to liability to the third person for the physical harm resulting from his failure to exercise reasonable care to protect his undertaking. . . ."

5

railroad crossing safety program. Defendant does not deny that it has any duty related to railroad safety, but rather argues that § 342A does not create a duty which is separate and distinct from a duty to safely maintain its property and operate its locomotives. Thus, the question here is whether BNSF's activities in disseminating information to the public and the transportation industry on railroad grade crossing safety through Operation Lifesaver has given rise to a separate duty under 324A.

Before liability may be imposed under § 324A, there must be a showing that a defendant undertook, gratuitously or for consideration, to render services to another. In order to meet this requirement, the evidence must show the defendant, through affirmative action, assumed an obligation or intended to render services for the benefit of another. I find this threshold showing to be lacking. I cannot see how contribution to and support of the Operation Lifesaver campaign constitutes either an affirmative act, or an agreement the railroad entered into with Plaintiffs.

I have found no case law which would support a theory of liability against Defendant premised on § 324A. Defendant's lobbying for a certain slant on public or governmental perceptions of railroad safety falls short of the type of conduct envisioned under § 324A. *Cmp., e.g., Prugue v. Monley, et al.*, 28 P.3d 1046, 1049 (Ct.App. Kan. 2001) (adopting a rule prohibiting employees from drinking while on duty did not operate to establish any duty by bar owner to third party motorist who was injured when he was struck by bar manager's vehicle after manager ingested alcohol while on duty); *Storts v. Hardee's Food Systems, Inc*., 210 F.3d 390, 2000 WL 358381 at *14 (10th Cir. 2000) (Hardee's internal policies and leasing agreement with Kansas Turnpike Authority did not create duty under § 324A owed to a third party, such as plaintiff who was raped outside store, or to the public at large).

Further, Defendant's financial and political support of a public information campaign is simply too tenuous a basis for liability based on § 324A. *Cmp., e.g. Nold v. Binyon et al.*, 31 P. 3d 274, 286 (Kan. 2001) (citations omitted) (physician has duty to inform nonpatient third parties of infectious disease to prevent its spread); *Ayala et al. v. U.S.*, 49 F.3d 607, 612 (10th Cir. 1995) (party who has undertaken duty pursuant to good samaritan doctrine may also be liable to third persons who rely on undertaking); *cmp. also, Chelf v. Compton, Slaton et al*, Civil No. 88-1153, slip op.(D.N.M. October 24, 1989) (finding that teaching ski lessons did not rise to level of "undertaking" as used in § 324, and as defined *Moya v. Warren*, 88 N.M. 565, 567 (1975)).[4]

Accordingly, Defendant's motion to dismiss as to claims brought under § 324A of the Restatement (Second) is well-taken and will be granted.

**THEREFORE**,

**IT IS ORDERED** that the Motion by Burlington Northern to Dismiss Certain Allegations of the Complaint Pursuant to Rules 12(b)(6) and (9)(b) **(Doc. 29)** will be GRANTED IN PART and DENIED IN PART, as set forth above.

_____
UNITED STATES DISTRICT JUDGE

---

[4] Plaintiff cites to numerous cases involving the liability under § 324 of trade associations and organizations for the negligent promulgating of safety standards. These cases are not helpful here. First, Plaintiffs are claiming direct damage by OLI, but are suing the railroad (unlike plaintiff in the cited cases). Second, OLI is an educational program directed to providing information to the public, and is therefore not analogous to manufacturers or trade associations which set standards that industry is expected and compelled to follow.